UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

OLIVE J. GORDON,

                              Plaintiff,

                                                    **MEMORANDUM & ORDER**

              -against-

                                                    06 CV 1517 (RJD) (LB)

HEALTH & HOSPITALS CORPORATION,
KINGS COUNTY HOSPITAL, and AMERICAN
FEDERATION OF STATE, COUNTY, AND
MUNICIPAL EMPLOYEES

                              Defendants.

-------------------------------------------------------------X

DEARIE, Chief Judge.

        *Pro se* plaintiff, a resident of Kings County, brings this action for age discrimination

pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), and

retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

("Title VII"), against defendants Health & Hospitals Corporation ("HCC") and Kings County

Hosptial Center ("KCHC") (collectively, "defendants"). This Court granted summary judgment

for defendant American Federation of State, County, and Municipal Employees ("AFSCME") by

Memorandum & Order dated July 12, 2007. The remaining defendants now move for summary

judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the Court grants

defendants' motion.

# BACKGROUND[1]

## A.     Employment History

Plaintiff was born on April 11, 1937, and came to the United States in May of 1978. In or around 1985, plaintiff began volunteering for HCC at KCHC. Gordon Dep. 36. Plaintiff began part-time employment with HHC at some point soon thereafter. According to KCHC documents, plaintiff was promoted to a full-time position as an "Institutional Aide" effective November 4, 1996. Carberry Decl. Ex. E. Plaintiff maintains, however, that her title was "Housekeeping Aid," and that these positions possessed different job descriptions and title codes. Gordon Dep. 26-30. At a minimum both parties agree that regardless of plaintiff's title, her duties consisted of the washing and cleaning of patient beds and rooms. Compare Gordon Dep. 26-27 with Carberry Decl. Ex. F & G. During plaintiff's almost decade-long tenure with HCC, she was assigned to work at several different departments and buildings within Kings County Hospital. Gordon Dep. 40-43.

## B.     Prior Litigation

There is a lengthy record of friction between the parties. In addition to and as a result of several internal disciplinary proceedings, plaintiff initiated several federal lawsuits against defendants over the years. In 1995, she filed suit in the Federal District Court for the Eastern District of New York against KCHC alleging a violation of the ADEA for failure to promote.

---

[1] Unless otherwise noted, the facts described here are undisputed. Plaintiff did not submit a response to Defendants' Local Rule 56.1 Statement of Material Facts as is required. Nonetheless, taking into account plaintiffs' *pro se* status, the Court exercises its discretion and looks to the factual allegations contained in plaintiffs' response, complaint, deposition testimony, and other submissions, and deems admitted only those of defendants' statements that plaintiff nowhere contests. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001).

Gordon v. Kings Co. Hosp. Center, 95-CV-3006. Plaintiff later commenced separate suits in the same court against KCHC for retaliation, Gordon v. Kings Co. Hosp. Center, 97-CV-3986, and against her union, AFSCME, for breach of duty of fair representation, Gordon v. Am. Federation Mun. Employees, 99-CV-3927. These suits were all consolidated before the Honorable Judge I. Leo Glasser, who granted defendants' motion for summary judgment on October 25, 2000. Gordon v. Kings Co. Hosp. Center, 2000 U.S. Dist. LEXIS 17440 (E.D.N.Y. Oct. 25, 2000) ("first federal action"). In addition, plaintiff brought another suit against HHC for false arrest and malicious prosecution. Gordon v. James, 97-CV-5241 ("second federal action"). That case was also heard before Judge Glasser, who granted summary judgment to the defendant in October of 2000.[2]

## C.    The 2004 Incidents

There is no record of allegations by either party between June of 2000 and April 20, 2004. On the later date, plaintiff received notice of allegations that on April 13 she had "1. . . . abandoned [her] post without authorization. 2. . . . been verbally abusive, threatening and menacing towards [her] Supervisor Ms. Patricia Hinds [and] 3. . . . failed to perform [her] duties as required." Pl.'s Aff. in Opp. to Defs.' Mot. ("Pl.'s Aff.") Ex. 6(a), 3. Plaintiff claims that on that date she was told by another employee that Hines was looking for her. Gordon Dep. 74. According to plaintiff, she then approached Hines and said, ". . . you just passed me and say good evening. Why you trying to make problems for me and tell Mrs. Templeby you cannot

---

[2] According to a letter provided by plaintiff from her attorney in that matter, Scott Korenbaum, plaintiff was offered $20,000 and an apology in order to settle that suit on May 26, 1998. Plaintiff claims that the settlement was never consummated because her lawyer "walk[ed] out on [her]." Gordon Dep. 46.

find me." To which, Hines allegedly replied, "who you talking to? You talking to the wrong person. . . . [G]et out my office. . . . I don't want you to work for me anymore." Id. at 74. Pursuant to Rule 7.5 of the Personnel Rules and Regulations of the New York City Heath and Hospitals Corporation, a New York City Office of Administrative Trials and Hearings hearing ("OATH hearing") was held on May 11, during which plaintiff "agreed that she would follow the rules of KCHC with regards to supervision and directives" and the case was withdrawn.[3] Carberry Decl. Ex. CC, 3. In response to these events, plaintiff filed a complaint against HHC and KCHC with the SDHR on June 23, 2004, alleging that Hines "brought me up on charges that could have caused me to lose my job. She lied and this caused me to have to go to arbitration. I won at hearing and all charges were dismissed. . . . I feel that Ms. Hines wrote me up because she wants to get rid of me because of my age . . ." Pl.'s Aff. Ex. 11(A).

Several months later, on July 15, 2004, plaintiff was suspended without pay pending a hearing. Notice of the charges against her were not sent until August 4, 2004. Pl.'s Aff. Ex. 7A. That notice alleged that plaintiff failed to follow through with a directive to clean the Associate Executive Director's (AED) isolation room on July 8; refused to accept a memorandum on July 13; failed to follow through with directive to mop and clean the AED's office on July 14; exhibited unprofessional and inappropriate behavior by being loud and disrespectful to a supervisor on July 13; and violated Section IX of the KCHC Employee Handbook. Plt's Aff. Ex. 7(A), 2. Plaintiff maintains that she was never asked to clean an isolation room and that "the

---

[3] Plaintiff asserts that her union representative made this statement, but acknowledges that she did not object. Gordon Dep. 77. She also claims that the charges were dropped because they were false, rather than as a result of her agreement to follow orders. Id. at 78.

4

real root of the latest problem" involved plaintiff's refusal to remove a bedpan from a patient's room. Pl.'s Aff. 2.

An OATH hearing was held on August 17, 2004. Plaintiff was informed about this hearing but did not attend because she was sick. Gordon Dep. 97. The August 31, 2004, recommendation written by hearing officer Denise Johnson-Green stated that "[a]ll parties were informed that should Respondent fail to appear, the Conference would be held in absentia. Respondent failed to appear. The Union left." Pl.'s Aff. Ex 7(B). Plaintiff, however, claims that she "never knew the conference could be held without [me]." Gordon Dep. 98. The report reviewed the testimony presented and concluded that plaintiff's services should be terminated. Ms. Johnson-Green later issued a second "amended" recommendation on December 14, 2004. This version differed from the first in that the charge related to plaintiff's refusal to clean the AED's office was dropped, and the claim and discussion of the first charge was altered to reference the Adult Emergency Room (AER) isolation room in lieu of the AED's isolation room.[4] Compare Pl.'s Aff. Ex. 7(B) with 7(C).

Plaintiff appealed this recommendation, and both parties appeared before Administrative Law Judge Tynia Richard ("ALJ") at OATH hearings on January 12 and February 22, 2005. During her testimony in front of the ALJ, plaintiff did not mention her belief that she had been or was being discriminated against on the basis of her age. Cadberry Aff. Ex. FF. The ALJ found plaintiff guilty of the insubordination charges and recommended a sixty-day suspension.

---

[4] In later testimony before the ALJ, Hines explained that she intended to refer to the Adult Emergency Department (rather than Room) isolation room and that there is no such thing as the Associate Executive Director's isolation room. Cadberry Decl. Ex. FF, 18. ALJ Richard found that this change was not substantive and therefore did not warrant a second OATH hearing. Id. at 5.

Carberry Decl. Ex. GG. Defendants accepted the ALJ's recommendation of guilt but modified the penalty so as to terminate plaintiff's employment. Id. at Ex. KK. Plaintiff's appeal of her termination to the Personnel Review Board of HCC was rejected on May 31, 2006. Id. at Ex. LL (finding that "the Corporation had the authority to modify the recommended penalty. Its decision to terminate the Appellant based on the nature of the insubordination, the disruption to the operation of the Emergency Department caused by her conduct and the Appellant's prior history of insubordination is neither arbitrary nor capricious").

Meanwhile, plaintiff had filed a second complaint before the SDHR on August 23, 2004, alleging that "[b]ecause I have filed a previous NYSDHR complaint, I was laid off on July 15, 2004 by Patricia Hinds, Supervisor. No reason was given for my layoff." Gordon Aff. Ex. 11B. Despite the fact that plaintiff apparently attempted to withdraw these complaints via a letter sent on August 27, 2005, id. at Ex. 11D, she nevertheless filed an amended complaint on September 7, 2004,[5] reiterating her retaliation claim and updating the record to include references to the OATH hearing that she did not attend, as well as a September 3, 2004, "disciplinary conference notice [recommending her] termination as a result of the above mentioned hearing." Id. at Ex. 11C. On July 19 and September 6, 2005, respectively, the SDHR determined without a hearing that there was no probable cause to support either of plaintiff's amended complaints. Id. at Exs. SS, UU.

On November 25, 2005, plaintiff, through counsel, filed a petition in New York State Supreme Court, Kings County, pursuant to Article 78 of the New York Civil Practice Law &

---

[5] The amended complaint states that it was subscribed and sworn before Notary Public Nellia L. Blaizes-McNear on August 23, 2004. However, markings presumably made by plaintiff on the submitted document indicate, consistent with the events described therein, that it was in fact submitted on September 7, 2004. Gordon Aff. Ex. 11C.

Rules (NYCPLR), naming HHC, KCHC and the SDHR as defendants. Id. at Ex. VV. On April 4, 2006, the Honorable Leon Ruchelsman issued a Decision and Order rejecting plaintiff's appeal. Gordon v. New York City Health and Hospitals Corp., No. 33500/05, slip op. at 2 (Sup. Ct. Kings Co., April 4, 2006); Carberry Decl. Ex. YY. On January 23, 2006, the United States Equal Employment Opportunity Commission ("EEOC") issued a "Dismissal and Notice of Rights" adopting the findings of the SDHR and advising the plaintiff of her right to sue. Id. at Ex. WW. Plaintiff filed the instant action on April 4, 2006.

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000) (quoting Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991)).

In deciding a motion for summary judgment, a court "must first resolve all ambiguities and draw all inferences in favor of the non-moving party . . . ." Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). However, in opposing such a motion, the nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the adverse party's pleading." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995)

7

(quotation marks and citation omitted). Rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

## B.    Preclusion

Defendants argue that "[t]o the extent that plaintiff is attempting to relitigate issues she previously brought or to litigate claims she could have brought in the New York State courts, these claims are barred by res judicata and/or collateral estoppel." Defs.' Reply Mem. in Supp. of Mot. Summ. J. 3. Dismissal is appropriate when a defendant raises preclusion as an affirmative defense and it is clear that the plaintiff's claims are barred as a matter of law. See, e.g., Conopco, Inc. v. Roll Intern., 231 F.3d 82, 86 (2d Cir. 2000).

### 1.    Applicable Law

The law recognizes two forms of preclusion: claim preclusion, or *res judicata*; and issue preclusion, or *collateral estoppel*.[6]  In Allen v. McCurry, the Supreme Court explained the difference between the two in the following manner:

> Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.  Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.

---

[6]A third doctrine known as the Rooker-Feldman doctrine stands for the proposition that "inferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." Vargas v. City of New York, 377 F.3d 200, 205 (2d Cir. 2004). The Rooker-Feldman doctrine "is generally applied coextensively with principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion)." Id.

449 U.S. 90, 94 (1980). These doctrines "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Id. at 94.

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." Id. at 96; accord Conopco, 231 F.3d at 87. "Under both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir.1997) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)). "New York employs a 'transactional approach' to res judicata; thus 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan, 263 F.3d 196, 200 (2d Cir. 2001) (citing O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357 (1981)). Moreover, "[u]nder [New York's transactional] analysis, a variation in the facts alleged, legal theories asserted, or relief sought in the new pleading generally will not affect the result, because separately stated causes of action 'may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought.'" Yoon, 263 F.3d at 201 (citing Gross v. Glick, 583 N.Y.S.2d 486, 488 (App. Div. 1992)).

In contrast, issue preclusion, under New York law, requires a showing that: "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against

9

whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995) (internal citations omitted).

In Kremer v. Chemical Construction Corporation, the Supreme Court held that a federal district court was required to give preclusive effect to a New York state court determination upholding the rejection by the SDHR of an employment discrimination claim. 456 U.S. 461 (1982).[7] In that case, after an SDHR finding of no probable cause of discrimination, plaintiff Kremer appealed "on both substantive and procedural grounds," Kremer v. Chimical Const. Corp., 623 F.2d 786, 787 (2d Cir. 1980), first to the SDHR Appeals Board and then to the Appellate Division of the New York Supreme Court pursuant to Article 78.[8] The Appellate Division unanimously affirmed the Appeal Board's holding that the SDHR's determination was "not arbitrary, capricious or an abuse of discretion." Id. at 464. The Supreme Court clarified that "[t]here is no question that this judicial determination precludes Kremer from bringing 'any

---

[7] The Supreme Court decided Kremer on issue preclusion grounds, in part perhaps because the transactional approach to *res judicata* had not yet been firmly established at the time. 456 U.S. at 481 (noting that res judicata "has recently been taken to bar claims arising from the same transaction even if brought under different statutes . . . . However that might be, it is undebatable that petitioner is at least estopped from relitigating the issue of employment discrimination arising from the same events"). Nevertheless, the opinion has been read by many courts as applying to claim preclusion as well. See e.g., Sherrock Bros., Inc. v. Daimler Chrysler Motors Co., LLC, 2008 WL 63300, at *4 n.6 (3rd Cir. Oct. 26, 2007) (citing Kremer for the proposition that "res judicata precludes relitigation of issues that were or could have been raised in an earlier litigation"); Smith v. Plati, 258 F.3d 1167, 1179-80 (10th Cir. 2001) (citing Kremer as "holding that once decided in a court of competent jurisdiction, the merits of a legal claim are not subject to redetermination in another forum"); Elder v. Illinois Dept. of Human Services, 2000 WL 689179, *2 (7th Cir. May 22, 2000) ("Under Kremer, a court employs a two-prong test for deciding whether a subsequent claim is precluded by the doctrine of res judicata."); Scalese v. Babbitt, 1999 WL 962467, *1-2 (9th Cir. Oct. 20, 1999) ("In Kremer the Supreme Court held that a state administrative agency's adjudication of an employment discrimination claim, once reviewed and affirmed by a state court, is res judicata . . . .").

[8] It is likely that Kremer's Article 78 proceeding went directly to the Appellate Division pursuant to § 298 of the New York Human Rights Law because there had been a public hearing on his claim. N.Y. Exec. Law § 298 (McKinney 2005).

other action, civil or criminal, based upon the same grievance' in the New York courts," id. at

467 (quoting N.Y. Exec. Law § 300 (McKinney 1972)), and that therefore he was similarly

precluded from bringing the same in federal court.

At first glance then, Kremer appears to preclude any plaintiff whose discrimination claim

has been dismissed by the SDHR and upheld by an Article 78 court from litigating that claim in

federal court. However, in Owens v. New York City Housing Authority, the Second Circuit

clarified the preclusive effect of Article 78 proceedings, holding that:

> [where] an Article 78 proceeding was limited to the issues of whether the
> administrative determination was made in violation of lawful procedure, was
> arbitrary or capricious or an abuse of discretion, or was not supported by
> substantial evidence . . . . [and t]he Article 78 reviewing court was not
> empowered to address [plaintiff's] claims of discrimination or retaliation [those]
> claims are not barred [in a subsequent Title VII suit in federal court] by the
> doctrine of *res judicata*.

934 F.2d 405, 410 (2d Cir. 1991); accord Sinicropi v. Nassau Co., 634 F.2d 45 (2d Cir. 1980)

(holding that plaintiff's retaliation complaint was not barred by *res judicata* where it had not

been adjudicated in a prior state court Article 78 proceeding); see also Vargas v. City of New

York, 377 F.3d 200, 207 (2d. Cir. 2004) ("A finding that the decision to terminate was supported

by substantial evidence—essentially a finding that it was rational—does not lead inexorably to

the conclusion that race was not a motivating factor in the . . . decision to terminate."); DiBlasio

v. Novello, 344 F.3d 292, 296 (2d Cir. 2003) (holding that plaintiff's due process claims were

not barred under Rooker-Feldman where the only issue decided in Article 78 proceeding was

whether defendant's decision to suspend plaintiff was "arbitrary and capricious" pursuant to

N.Y.C.P.L.R. 7803(3)); Weise v. Syracuse Univ., 553 F. Supp. 675 (N.D.N.Y. 1982) (finding

11

that plaintiff's claim of discriminatory tenure reconsideration, which was not treated by state court, remained properly before the federal court in a Title VII action).

## 2.    The Instant Matter

In support of their preclusion arguments defendants cite Kremer, Yan Yam Koo v. Department of Buildings of City of New York, 218 Fed. Appx. 97 (2nd Cir. Feb. 28, 2007), and Skeete v. Pathmark Stores, Inc., 182 F.3d 901 (2d Cir. June 16, 1999).[9] A review of those decisions reveals a critical distinction vis-a-vis the instant matter: In all three of the cases cited by defendants, the Article 78 proceeding reviewed the plaintiffs *substantive* as well as procedural claims. As noted above, Kremer appealed his SDHR denial to the Article 78 court "on both *substantive* and procedural grounds." Kremer, 623 F.2d 786, 787 (2d Cir. 1980) (emphasis added). Similarly, the Court in Yan Yam Koo noted that the record "demonstrate[d] that the plaintiff presented the *same issue and allegations of discrimination and retaliation to the state court* in both his complaint to the SDHR and his Article 78 proceeding as he did in his federal district court complaint." 218 Fed. Appx. at 99 (emphasis added). The opinion in Skeete also stated explicitly that it "agree[d] with the district court that Skeete received a full and fair adjudication of his employment *discrimination claims* in state court. Accordingly, he cannot now relitigate those claims in a federal forum." 182 F.3d at 901 (emphasis added). The key issue then, is whether the New York Supreme Court's Article 78 proceeding in this case addressed plaintiff's substantive discrimination claims, as was the case in Kremer, Yan Yam Koo, and Skeete; or whether it dealt exclusively with procedural claims, as in Owens.

---

[9] The Court notes these last two opinions are summary orders and cautions counsel that under the Second Circuit's Local Rule 0.23 summary orders do not have precedential effect. 2d Cir. R. § 0.23. In addition, citation to summary orders issued prior to January 1, 2007 is prohibited, while citation to those published after that date must be noted as such. Id.

It is unclear from plaintiff's Article 78 petition whether she sought review of HHC's administrative procedure resulting in her termination, or SDHR's finding of no probable cause of age discrimination, or both.[10] The focus of the Article 78 court's order is also less than clear. The order concludes with the following statement: "based on the foregoing [analysis], the *determination to terminate petitioner* without conducting a hearing was not arbitrary or capricious and petitioner's motion seeking to vacate that decision is consequently denied." Gordon, at 2 (emphasis added). The decision to terminate plaintiff was made by HHC and KCHC, not by the SDHR. Nevertheless, a careful analysis of the state court's decision reveals that its review and analysis focused on the SDHR's administrative procedure.

After reviewing the procedural background of the case, Justice Ruchelsman summarized the plaintiff's petition in the following way: "petitioner now moves seeking to reverse that determination on the grounds *the respondent's actions dismissing her complaints without a hearing* were improper." Id. at 2. Respondents in plaintiff's Article 78 action were HHC, KCHC and the SDHR. The reference to plaintiff's "complaints" is taken to refer to her SDHR filings. While petitioner complained in those filings about *not being present* at the August 17, 2004, OATH hearing, it is undisputed that the OATH hearing did in fact take place; while it is likewise clear that *the SDHR did not hold a public hearing*. Justice Ruchelsman went on to state that "[i]n this case the petitioner's challenge is grounded on the fact that the administrative

---

[10] In a section of the petition titled "Jurisdiction and Venue," plaintiff described the action as a "special proceeding to challenge the final determination of a public body or officer, *namely the New York City Health and Hospitals Corporation*." Carberry Decl. Ex. VV, at 2 (emphasis added). While the petition refers to some of the alleged incidents of discrimination by defendants, the bulk of the petition relates to procedures followed and conclusions made by the SDHR. The petition then concludes by requesting that the N.Y. Supreme Court "remand[] this matter *to the [S]DHR* for an evidentiary hearing, setting aside [S]DHR's determinations as arbitrary, capricious and contrary to law . . . ." Id. at 7 (emphasis added).

13

determination without a full hearing on the matter was arbitrary and capricious," id., and that "[i]t is well settled that there is no per se rule that all investigations concerning complaints conducted by the [S]DHR must be resolved at a hearing and that the [S]DHR maintains broad discretion as to the best manner to conduct its investigations," id. at 3 (citing In re Camp, 751 N.Y.S.2d. 564 (App. Div. 2002)). The order then analyzes, albeit in a somewhat cursory manner, the SDHR's procedures in this instance. From all of this, the Court interprets the state court's review to have focused on the SDHR's finding of no probable cause to support plaintiff's allegation of age discrimination, rather than the allegedly discriminatory decision by HHC and KCHC to terminate her employment.[11]

The Article 78 court's order reviewed the SDHR's procedures and concluded that no due process improprieties occurred. Nowhere in the opinion did the state court address plaintiff's underlying discrimination claims, or any of the issues related to them. As a result, plaintiff's discrimination and retaliation claims are not precluded, see Owens, 934 F.2d 405, and the Court therefore turns its attention to the substance of those claims.[12] Nevertheless, to the extent that plaintiff also alludes to events and issues that were part of the discrimination and false arrest cases dismissed by Judge Glasser in 2000, see, e.g., Pl.'s Aff. 1, those facts and arguments *are* precluded, as well as time barred, and will not be considered by this Court.

---

[11] The Court notes that, even if the New York Supreme Court had determined that plaintiff's dismissal by HHC and KCHC was not improper, such a finding could nevertheless have been, and indeed in this instance would appear to have been made without passing judgment on the merits of her discrimination claim. See Vargas v. City of New York, 377 F.3d 200, 207 ("A finding that the decision to terminate was supported by substantial evidence—essentially a finding that it was rational—does not lead inexorably to the conclusion that race was not a motivating factor in the . . . decision to terminate.")

[12] Defendants assert issue as well as claim preclusion in their motion. Because neither the claim—plaintiff's allegation of discrimination—nor any of the issues related to it were addressed in the state court action, the Court finds neither preclusion argument to be persuasive.

## C.   Age Discrimination

Defendants argue that plaintiff has failed to establish a *prima facie* case of age

discrimination. Defs.' Mem. in Supp. of Mot. Summ. J. 9 ("Defs.' Mem."). In the alternative,

defendants claim to "have met their burden of producing evidence that the actions about which

plaintiff complains were taken for legitimate non-discriminatory reasons, and plaintiff cannot

demonstrate a material issue of fact on the issue of pretext." Id. at 9-10.

### 1.   Applicable Law

Courts typically apply the three-part burden-shifting analysis set forth in McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973), to age discrimination claims. Schnabel v.

Abramson, 232 F.3d 83, 87 (2d Cir. 2000). Under the McDonnell Douglas framework, the

plaintiff's initial burden is to establish a *prima facie* case of discrimination. "An ADEA plaintiff

meets that burden by showing that (1) she was within the protected age group, (2) she was

qualified for her position, (3) she suffered an adverse employment action, and (4) that action

took place in circumstances giving rise to an inference of discrimination." Holtz v. Rockefeller

& Co., Inc., 258 F.3d 62, 76-77 (2d Cir. 2001). The burden of establishing a *prima facie* case

under Title VII "is not onerous, and has been frequently described as minimal." Scaria v. Rubin,

117 F.3d 652, 654 (2d Cir. 1997).

Where the plaintiff succeeds in establishing a *prima facie* case of discrimination, "[t]he

burden then [shifts] to the employer to articulate some legitimate, nondiscriminatory reason for

the employee's rejection." McDonnell Douglas, 411 U.S. at 802. "If defendant carries this

burden of production, the presumption . . . is rebutted, and the factual inquiry proceeds to a new

level of specificity." Id. at 255. The plaintiff must then "demonstrate that the proffered reason

was not the true reason for the employment decision . . . . She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256.

## 2. The Instant Matter

The Court finds that plaintiff has failed to meet her burden of establishing a *prima facie* case of age discrimination. It is clear from the sum and substance of plaintiff's allegations, as gleaned from her SDHR complaints and her affirmation in opposition to defendants' motion, that she is asking this Court to revisit the various disciplinary accusations and conclusions that led to her termination. The procedures and outcomes of those disciplinary proceedings are not reviewable by this Court absent proof that they were affected by discriminatory motives. Plaintiff has failed to provide substantive evidence of discrimination against her on the basis of her age, and her age discrimination claim must therefore be dismissed.      Defendants concede that "plaintiff is over forty years of age and thereby a member of the protected class under the ADEA." Defs.' Mem. 10, n.2. They also do not contest plaintiff's qualifications, or the fact that she suffered an adverse employment action. Defendants focus instead on the fourth element of the *prima facie* test: the inference of discrimination. They note that plaintiff has directed the brunt of her age discrimination allegations toward her supervisor Patricia Hines.[13] Gordon Dep.

---

[13] Plaintiff maintains that Ms. Hines was not her supervisor. Pl.'s Aff. in Opp. to Mot. Summ. J. 1. However, it is clear that as Associate Director of the Emergency Medicine department at KCHC Hines exercised supervision over the plaintiff. Cadberry Aff. Ex. FF 9.
Defendants also note plaintiff's age discrimination-related accusation against Phil Romaine, who oversees disciplinary proceedings. Gordon Dep. 77, 138. However, the Court finds nothing in the comments or circumstances surrounding Romain's alleged threatening of plaintiff that a rational fact-finder could conclude evinces age-based discrimination.

73, 80. Specifically, plaintiff alleges that sometime around May of 2004 Hines asked plaintiff how old she was, id. at 73, and told her that "it is time for retirement," id. at 104; 126 ("I don't know about anybody else but me and Mrs. Hines. If Mrs. Hines never asked me about my age and then come and tell me I'm limping, I must retire, I would not say it is my age but this is true."). Plaintiff cites these statements as evidence of Hines's motive for cooking up false charges and otherwise threatening plaintiff's job security: "since I never lost the job, she found some other way to do it because when she said I threatened her and I don't work and things, and brings me up on false charges is this, and then she put me off the job again, the next time without pay. She keeps just at me." Id. at 81. Defendants maintain that "plaintiff's arguments are merely conclusory and provide no basis for even an inference that the actions of which she complains were motivated by any discriminatory animus." Defs.' Mem. 14.[14]

The Second Circuit has held that stray remarks "without more, cannot get a discrimination suit to a jury." Danzer v. Norden Systems, Inc.,151 F.3d 50, 56 (2d Cir. 1998); accord Douglas v. Dist. Council 37 Mun. Employees Fund Trust, 207 F. Supp. 2d 282, 291 (S.D.N.Y. 2002) (holding that where plaintiff was unable to provide the context in which allegedly discriminatory comments were made, those "stray" comments failed to raise an inference of discrimination); Ranieri v. Highland Falls-Fort Montegomery Sch. Dist., 198 F. Supp. 2d 542, 545 (S.D.N.Y. 2002) ("Stray workplace remarks that have no demonstrated nexus to the personnel action complained of are insufficient to defeat a motion for summary judgment."). In this case, plaintiff makes three related assertions: (i) that Hines harbored ill-will

---

[14] Defendants also argue that because Ms. Hinds was not in a position to terminate plaintiff, her comments cannot be tied to any adverse employment action. Defs.' Mem. 14.

toward her, (ii) that this ill-will was based on her age, and (iii) that Hines set in place a scheme

to get her fired. Her attempts to rest all three of these assertions upon two isolated statements by

Hines are simply too attenuated to create an inference of discrimination.

The first comment (inquiring as to the plaintiff's age) was a simple question, innocuous

on its face. The second ("it is time for retirement") is admittedly more troubling, but it is

nonetheless insufficient on its own to establish an inference of discrimination. The context

provided by plaintiff is that she was pushing a cart and limping when she was confronted by

Hines. Gordon Dep. 79, 104. Our sister court's holding in Douglas is illustrative. In that case,

plaintiff based his age discrimination complaint, *inter alia*, on a comment made by an unnamed

secretary that "[t]hat is what happens when you get old, you lose your hair." 207 F. Supp. 2d at

286-87. After finding that plaintiff failed to provide sufficient context for this remark, the Court

concluded that the comment fell "'well within the parameters of 'ambiguous' and 'abstract.''

[and as such did] not raise an inference of discrimination." Id. at 291 (quoting Ranieri, 198 F.

Supp. 2d at 545). Just like the hair comment in Douglas, Hines's comment is open to a variety

of interpretations ranging from factual, to comical, to inappropriate. In and of itself, even in the

context of plaintiff's dismissal, it does not provide sufficient grounds for an inference of

discrimination.

Even if the Court were to find that plaintiff had successfully established a *prima facie*

case of age discrimination, defendants have articulated legitimate, nondiscriminatory reasons for

their decision, citing plaintiff's insubordination in combination with her extensive disciplinary

record as the true reasons for her dismissal. Barrow v. Ford Motor Co., 2007 WL 1655660, at

*15 (W.D.N.Y., June 5, 2007) (citing McLee v. Chrysler Corp., 109 F.3d 130, 135-37 (2d Cir.

1997) for the proposition that "an employee's disciplinary record can establish . . . that . . . the employer's motive for an adverse employment action was not discriminatory").

Plaintiff makes several allegations that can be construed as attempts to question the veracity of defendants' proffered justification. Upon review, the record reveals that these consist mostly of misunderstandings, or minute and meaningless errors, none of which are sufficient, alone or in combination, to demonstrate pretext. Plaintiff points first to the fact that the charges made regarding her conduct on April 13, 2004, were dismissed and expunged from her record. Pl.'s Aff. 1. However, the notes from the OATH hearing clarify that these actions were taken in response to representations made either by plaintiff, or by her counsel without her objection, that she "would follow the rules of KCHC with regards to supervision and directives," Carberry Decl. Ex. CC, 3, and not out of any recognition or admission of fabrication.

Plaintiff further alleges that the letter informing her of her termination lacked a date, Gordon Dep. 125 ("She fired me without a date of a letter. You fire somebody? Junk mail even has a date . . ."); that the formal charges brought against her relating to the July disciplinary allegations were later amended, Pl.'s Aff. 2 ("The number one charge of the amended charge was changed to be the Adult Emergency Isolation Room, which happens to be the area plaintiff is assigned to work."); and that the "real root of the latest problem" was plaintiff's refusal to follow an order by Jean Leon to remove a bedpan, id.

Neither the fact that her original termination letter was undated, nor defendants' mistake in interpreting Hines's use of the acronym "AED" constitute sufficient evidence to call into question defendants' assertion that plaintiff was fired because of her extensive disciplinary record. With regard to the "bedpan incident," the Court notes that plaintiff was charged for

19

failing to follow Section IX of the KCHC Employee Handbook, which obligates employees to perform first and question later, irrespective of whether or not the task iss within their job description. Cadberry Decl. Ex. II.[15] Plaintiff admits that Leon never made any age-related comments to her, Gordon Dep. 104, but alleges that Hines set Leon up to "come do these things," id. at 105. Plaintiff does not deny that she refused to comply with the order, Pl.'s Aff. 3 ("Plaintiff did not remove the covered bedpan because in plaintiff's years of working, plaintiff is aware that the removal of a covered bed pan is the duty of the nurse or nurse's aid . . ."), and therefore admits to not following the relevant procedure. The Court finds that even if plaintiff had established a *prima facie* case of age discrimination, she has not successfully rebutted defendants' legitimate non-discriminatory justification for her dismissal.

"The ultimate issue in an ADEA case is whether the plaintiff has proved by a preponderance of the evidence that her age played a motivating role in, or contributed to, the employer's decision." Holtz, 258 F.3d at 76 (internal citation omitted). Here, plaintiff has failed to generate a material issue of fact on this critical element. As a result, the Court grants summary judgment for defendants on plaintiff's age-discrimination claim.

## D.    Retaliation

### 1.    Applicable Law

---

[15] The relevant portion of Section IX reads: "Employees are to perform assigned duties satisfactorily. If an employee feels that an instruction is unreasonable, the employee is to perform the task and file a complaint afterward. In exceptional cases, if an employee feels his or her health or safety is in jeopardy, the employee must bring it to the attention of the immediate supervisor." Cadberry Decl. Ex. II. Plaintiff makes no allegation that the bed pan request in any way jeopardized her health of safety.

The allocation of burdens of proof in retaliation cases follows the same general scheme set forth in McDonnell Douglas. Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." Id. As with discrimination claims under Title VII, if a plaintiff succeeds in establishing a *prima facie* case of retaliation, the burden shifts back to the defendant to articulate a legitimate, nondiscriminatory reason for its actions, after which the plaintiff may offer evidence to show that the proffered reason is pretextual.

## 2.      The Instant Case

There is no indication that plaintiff believed anything other than that her original SDHR discrimination claims were based on violations of the law. In Wimmer v. Suffolk County Police Department, the Second Circuit held:

> To establish the . . . participation in a protected activity [plaintiff] need not prove that the conditions against which [s]he protested actually amounted to a violation of Title VII. Rather, [plaintiff] must demonstrate only that [s]he had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.

176 F.3d 125, 134 (2d Cir. 1999) (citations omitted). Plaintiff has established this first element.

Turning to the second element, defendants maintain that "plaintiff presents no evidence, other than speculation, that any of her supervisors were aware of this complaint. Accordingly, plaintiff has failed to meet her burden . . . ." Defs.' Mem. 19. A showing of individual awareness, however, is not required by the law. See Gordon v. New York City Bd. of Educ., 232

21

F.3d 111, 116 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.") The Court finds that defendants had general corporate knowledge of plaintiff's SDHR complaint. In addition, as stated above, there is no dispute that plaintiff suffered an adverse employment action.

As for the final element of plaintiff's *prima facie* claim, "[p]roof of causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant." DeCintio v. Westchester County Medical Center, 821 F.2d 111, 115 (2d Cir.), cert. denied, 484 U.S. 965 (1987) (emphasis and citations omitted). Defendants argue that "the discriminatory acts (false charges, false statement) of which plaintiff complains preceded at least in part, plaintiff's [SDHR complaint] and, therefore, cannot be used to support a claim of retaliation." Defs.' Mem. 18. However, plaintiff's allegations are not limited to the "false charges [and] false statement" related to the April 2004 charges, but also include the June 2004 events, which clearly post-date her first SDHR complaint. In addition to the "false" April 2004 charges, plaintiff also cited as evidence of retaliation: (1) "several series of harassment in one way or another with a list of false accusations," including her July 1996 arrest, Pl.'s Aff. 1; (2) the amendment of the July 15 charges, id. at 2; (3) the fact that the termination letter was undated, id.; and (4) "[a]ll that Ms. Leon says in her letter [justifying plaintiff's dismissal in spite of the ALJ's report]," Gordon Dep. 101.

As the Court has already indicated, the first allegation is precluded in so far as it was raised before and dismissed by Judge Glasser. In addition, for the reasons already cited above, neither the amendment of the July 15 charges, nor the lack of date on the termination letter establishes a causal connection between the plaintiff's SDHR filings and her eventual dismissal. However, the temporal proximity of plaintiff's engagement in a protected activity (filing her SDHR complaint) with defendants' decision to fire her can be sufficient in and of itself to establish a causal connection. See, e.g., Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 224 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.") (citation omitted).[16] The fact that the decision to dismiss plaintiff went against the ALJ's recommendation only reinforces plaintiff's *prima facie* claim of discrimination.

Nevertheless, defendants have offered a legitimate, non-discriminatory reason for this decision. Defendants again assert plaintiff's lengthy disciplinary record, in combination with the July 2004 insubordination, as reasons for terminating plaintiff's employment. As the Court has already noted, plaintiff does not deny that she failed to follow the dictate of Section IX of the KCHC Employee Handbook, which obligates employees to perform first and question later. The

---

[16] Defendants cite the Second Circuit's opinion in Slattery v. Swiss Reinsurance America Corp. for the principle that "where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." 248 F.3d 87, 95 (2d Cir. 2001). This case, however, is distinguishable. The Slattery Court concluded that "the adverse employment actions were both part, and the ultimate product, of 'an extensive period of progressive discipline' which began when [defendant] diminished Slattery's job responsibilities a full five months prior to his filing of the EEOC charges." Id. While it is clear that Gordon had a significant disciplinary record, it is also not contested that almost four years passed without incident prior to the events that eventually lead to this action. Thus, her disciplinary record cannot be construed as "an extensive period of progressive discipline."

decision to fire her as a result of this failure is legitimate and nondiscriminatory on its face. E.g., Hines v. City of New York, 159 F.3d 1346, 1998 WL 514323, at *2 (2d. Cir. 1998) ("Even assuming, arguendo, that [plaintiff] could make out a prima facie case, his insubordination provided the City with a legitimate, nondiscriminatory reason for its actions."). None of the evidence presented by plaintiff could persuade a rational decision maker that this explanation for her dismissal is in any way pretextual. Therefore her retaliation claim must fail.

## CONCLUSION

For the reasons elaborated above, the Court grants summary judgment for defendants on plaintiff's discrimination and retaliation claims.

SO ORDERED.

Dated: Brooklyn, New York
    March 31, 2008

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge